UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**WILLIAM TURNER MARTIN,**

    Petitioner,

v.   Case No. 5:21-cv-539-WFJ-PRL

**SECRETARY, DEPARTMENT OF CORRECTIONS, and ATTORNEY GENERAL, STATE OF FLORIDA,**

    Respondents.
_____/

## ORDER

William Martin, a Florida prisoner, instituted this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). At the Court's direction, Respondents filed a response to the petition and relevant portions of the state court record. (Doc. 7). Martin filed a reply. (Doc. 8). Thus, the petition is ripe for review. The Court has reviewed the entire record. Because the Court may resolve the petition based on the record, an evidentiary hearing is not warranted. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(a). Upon consideration, the Court concludes that the petition is due to be dismissed.

**I.   BACKGROUND**

On December 17, 2015, a state court jury found Mr. Martin guilty of burglary of a dwelling (Count I) and grand theft (Count II). (Doc. 7-1 at 8–9). Martin appealed and on November 3, 2017, the Fifth District Court of Appeal (Fifth DCA) affirmed

1

regarding Martin's burglary conviction, but reversed his grand theft conviction and instructed the trial court to enter a judgment of guilty for petit theft. (Doc. 7-1 at 42–43).

On November 18, 2018, Martin filed a Rule 3.850 motion for postconviction relief in state court. (Doc. 7-1 at 56–80). The state postconviction court held an evidentiary hearing and denied the motion on August 4, 2020. (Doc. 7-1 at 232–311, 413–37). Martin appealed and the Fifth DCA *per curiam* affirmed and issued mandate on August 13, 2021. (Doc. 7-1 at 554, 556).

On October 14, 2019, Martin filed a Rule 9.141 petition for writ of habeas corpus with the Fifth DCA. (Doc. 7-1 at 134–51). On March 18, 2020, that court denied the petition. (Doc. 7-1 at 230). Martin filed his petition for writ of habeas corpus in this Court on October 29, 2021. (Doc. 1).

## II. LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. *See* 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief may not be granted on a claim adjudicated on the merits in state court unless the adjudication of the claim:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations [of] a federal court[.]" *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The Eleventh Circuit discussed the meaning of the clauses in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court finds that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id.*

Under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." A state court's factual

---

[1] Whether a state court's decision was an unreasonable application of federal law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *Bell v. Cone*, 535 U.S. 685, 697 n.4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

3

determination is presumed correct, and the habeas petitioner must rebut the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

### III.   DISCUSSION

#### A.   The Petition is Untimely

Respondents argue that the petition should be dismissed because it is untimely under AEDPA's one-year statute of limitations. The Court agrees.

The Fifth DCA affirmed Mr. Martin's conviction on November 3, 2017. (Doc. 7-1 at 42–43). Martin's conviction became final ninety days later on February 1, 2018. *See Hall v. Sec'y Dep't of Corr.*, 921 F.3d 983, 987 (11th Cir. 2019) (citing *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002)) (If a habeas petitioner's conviction is reviewed by an appellate court, their judgment becomes final ninety days after entry of judgment, the time window in which they "could have petitioned the Supreme Court of the United States for a writ of certiorari.").

On November 18, 2018, 289 days after his conviction became final, Martin filed a Rule 3.850 motion. (Doc. 7-1 at 56–80). The limitations period was tolled during the pendency of Martin's Rule 3.850 motion and began running when the Fifth DCA issued mandate affirming the postconviction court's denial of the motion on August 13, 2021. (Doc. 7-1 at 556); *see* 28 U.S.C. § 2244(d)(2) (Statutory tolling allows a petitioner to toll the running of the limitations period while "properly filed" state post-conviction actions are pending); *San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (citing *Lawrence v. Florida*, 549 U.S. 327, 331–32 (2007)) ("The AEDPA clock

4

resumes running when the state's highest court issues its mandate disposing of the motion for post-conviction relief."). Mr. Martin's Rule 9.141 motion does not affect the tolling analysis because it was filed and resolved while the limitations period was already tolled.

On October 29, 2021, Martin filed this petition after 366 days of untolled time passed. (Doc. 1 at 5). Thus, Martin's petition for writ of habeas corpus was not timely filed. Martin does not assert that he is entitled to equitable tolling. Although Martin states in his petition that he maintains his innocence, he does not provide any support and thus he cannot make a claim of actual innocence to excuse his delayed filing. Even if Martin's claims were not untimely, they are procedurally barred and meritless.

### B. Ground One and Ground Two are Procedurally Barred

"A federal habeas claim may not be reviewed on the merits where a state court determined . . . that the petitioner failed to comply with an independent and adequate state procedural rule that is regularly followed." *Philmore v. McNeil*, 575 F.3d 1251, 1260 (11th Cir. 2009). "[U]nder Florida law, a claim is procedurally barred from being raised on collateral review if it could have been, but was not raised on direct appeal." *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1177 (11th Cir. 2010). The Eleventh Circuit has found that this procedural rule is independent and adequate. *Thomas v. Att'y Gen.*, 992 F.3d 1162, 1185 (11th Cir. 2021) (citing *Spencer*, 609 F.3d at 1179).

In Ground One, Mr. Martin alleges that when the State failed to provide discovery until two weeks before trial, it inhibited his ability to prepare his defense and violated his due process rights. (Doc. 1 at 3). Martin raised this issue in his Rule 3.850

5

motion but the postconviction court instructed Martin that the claim is not cognizable in Florida post-conviction proceedings and should have been raised on direct review instead. (Doc. 7-1 at 61–63, 226). In Ground Two, Mr. Martin alleges that his property was unlawfully seized during a traffic stop. (Doc. 1 at 3). Martin never filed a motion to suppress. Martin raised this issue in his Rule 3.850 motion but the postconviction court, again, instructed Mr. Martin that the claim is not cognizable in Florida post-conviction proceedings. (Doc. 7-1 at 58–60, 226).

Martin amended his Rule 3.850 motion and did not include these claims. (Doc. 7-1 at 86–122). As Martin was procedurally barred from asserting these claims in the state postconviction proceedings, Martin's claims are procedurally barred on federal habeas review. *See Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) ("When the [petitioner] has failed to [present his federal claims in state court], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

    C.    <u>Ground One and Ground Two are Meritless</u>

Even if his claims were timely and not procedurally barred, Martin's claims would still fail because they are meritless.

Beginning with Ground One in which Martin claims that the state denied him his due process rights when committing a discovery violation. (Doc. 1 at 3). Martin's first counsel withdrew before trial because of a conflict, and consequently, Martin's trial counsel was assigned to his case shortly before the trial began. (Doc. 1-4 at 4, 15). Trial counsel entered a notice of appearance two weeks before trial and the State sent him its discovery responses. (Doc. 1-4 at 3–4). Trial counsel claimed that the State did

not produce a video of Mr. Martin's traffic stop—during which officers seized the television Martin stole—while the State claimed that the video was in the discovery materials it sent to trial counsel. (Doc. 1-4 at 7–9). Trial counsel did not address this issue with the State until the weekend before trial. (Doc. 1-4 at 9). On the Monday of jury selection, trial counsel brought the issue to the trial court alleging a discovery violation and the trial court held a *Richardson* hearing.[2] (Doc. 1-4 at 2). The trial court found there was no discovery violation because trial counsel was aware of the video and could have sought it from the State sooner. (Doc. 1-4 at 9–11).

A delay in producing evidence can amount to a due process violation if the petitioner can show prejudice. *United States v. Cook*, 336 F. App'x 875, 877 (11th Cir. 2009) (quoting *United States v. Beale*, 921 F.2d 1412, 1426 (11th Cir. 1991)). Prejudice is established by showing that there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Brester*, 786 F.3d 1335, 1339 (11th Cir. 2015) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial," is insufficient. *United States v. Agurs*, 427 U.S. 97, 109–10 (1976).

Martin makes two factual allegations in support of his claim. The first allegation that Martin makes is that he did not have time to prepare his own defense; however,

---

[2] When faced with a possible discovery violation, Florida courts will hold a *Richardson* hearing to determine "whether the violation (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation." *Brown v. State*, 165 So. 3d 726, 728–29 (Fla. 4th DCA 2015) (citations omitted).

he also claims this is because his counsel never went over the discovery evidence with him. (Doc. 1 at 5–6). Martin does not allege that his trial counsel did not have the ability to prepare his defense because of the alleged discovery violation. Even if the State disclosed the evidence sooner, it likely would not have affected the outcome as Martin's trial counsel was not assigned to the case until shortly before trial.

The second allegation that Mr. Martin makes is that a portion of the traffic stop video not shown by the State would have "exonerate[d] him[.]" (Doc. 1 at 5). Martin does not specify what is on the video that could have exonerated him and does not allege how the discovery violation inhibited his ability to use the video.[3] Martin does not point to any other evidence that could have been used more effectively had discovery been provided sooner or to any evidence that could have been excluded with additional time to prepare. *See Beale*, 921 F.2d at 1426 (a petitioner can show prejudice when "the material came so late that it could not be effectively used[]"). Martin also does not allege that the results of the proceedings would have been different if the State disclosed the evidence sooner. *See Brester*, 786 F.3d at 1339. Therefore, even if there was a discovery violation, Martin does not demonstrate that he was prejudiced by it.

In Ground Two, Mr. Martin alleges that his property was unlawfully seized during a traffic stop. (Doc. 1 at 3). Martin was a passenger in a car that was stopped on the side of the road. (Doc. 1-7 at 18). An officer pulled up next to the car and the driver began pulling away. (Doc. 1-7 at 18). The officer pulled the car over because the

---

[3] It appears that the State made the traffic stop video available to Martin's trial counsel during the *Richardson* hearing, and thus, he had access to the video before trial. (Doc. 1-4 at 12–13).

8

driver and Martin were not wearing seatbelts. (Doc. 7-1 at 416–17). The officer arrested the driver because her driver's license was suspended, and she lied about her identity. (Doc. 7-1 at 417). The car was impounded because it was not registered, and the officers conducted an inventory search during which they seized a television in the backseat that was reported stolen in a burglary that happened near the stop. (Doc. 7-1 at 416–17). Mr. Martin was later arrested because he claimed ownership of the television. (Doc. 7-1 at 426 n.5).

Martin claims officers had no right to seize the television. (Doc. 1 at 10). The officers had probable cause to stop the car because Martin and the driver were not wearing their seatbelts, a traffic violation under Florida law. *See* Fla. Stat. § 316.614; *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)) ("[A] decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred."). After discovering that the car was not registered, the officers impounded the car and conducted an inventory search.[4] (Doc. 1-7 at 12). Thus, the officers did not need a warrant to conduct an inventory search of the car.[5] *See United States v. Isaac*, 987 F.3d 980, 988–89 (11th Cir. 2021) (citations and quotations omitted) ("Though the police generally need a warrant to conduct a search, they do not need a warrant to search an impounded car if they (1) had the authority to impound the car, and (2) followed

---

[4] Further, it appears that the driver consented to a search of the vehicle. (Doc. 1-7 at 12).
[5] Martin does not allege that the inventory search was contrary to Sheriff's Office policies governing inventory searches and there is nothing in the record to indicate that officers did not follow the relevant policies.

department procedures governing inventory searches."). Therefore, the television was not unlawfully seized.[6]

Martin's claims are meritless. Accordingly, Grounds One and Two do not warrant federal habeas corpus relief. *See* 28 U.S.C. § 2254(d)(1), (2).

## III. CONCLUSION

For the reasons stated above, the Court finds that Martin's petition for writ of habeas corpus (Doc. 1) is untimely, procedurally barred, and meritless. Therefore, the petition is dismissed with prejudice. The Clerk is instructed to enter judgment accordingly, terminate any pending motions, and close the file.

In addition, a certificate of appealability is denied. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a showing, Mr. Martin "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (internal citation and quotation omitted). Alternatively, Martin must demonstrate that "the issues presented

---

[6] Further, in his amended Rule 3.850 motion, Mr. Martin asserted that his counsel was ineffective for failing to file a motion to suppress the television. (Doc. 7-1 at 101–02). The postconviction court found that Martin's trial counsel was not ineffective for failing to file a motion to suppress because there was no reasonable probability that a motion to suppress would have been granted. (Doc. 7-1 at 417). The postconviction court already found that Martin was not prejudiced by his counsel's failure to file a motion to suppress because any argument for suppression was meritless. (Doc. 7-1 at 417). Martin does not present any evidence to rebut the postconviction court's finding. *See Parker*, 244 F.3d at 835–36.

were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted). Martin has not made the requisite showing. Because Martin is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis at this time.

**DONE AND ORDERED** at Tampa, Florida, on April 16, 2024.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Counsel of Record
William Turner Martin, pro se